UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

BARRY A. HOPKINS and
SANDY G. HOPKINS,                                                No.   7-13-11871 TA

     Debtors.

EDWARD A. MAZEL,
Chapter 7 Trustee,

     Plaintiff,

v.                                                                                    Adv. No. 13-1101 T

BARRY A. HOPKINS,
SANDY G. HOPKINS, et al.,

     Defendants.

## MEMORANDUM OPINION

Before the Court are two motions filed by Plaintiff to strike certain of Defendants' affirmative defenses.[1] As set forth below, the Motions will be granted.

### I.    Background[2]

Plaintiff's claims relate to two Qualified Terminable Interest Property ("QTIP") trusts created by the Hopkins in December 2010, about four months after they received a letter demanding payment of a real estate loan Mr. Hopkins guaranteed. The Hopkins conveyed or assigned into the trusts all of their real estate, their stock in the family concrete business, their interest in a real estate company, and all of their tangible personal property. Mr. Hopkins is the

---

[1] Motion to Strike Defendants Hopkins' Affirmative Defenses, doc. 26 (the "Hopkins Motion"), and Motion to Strike Defendants Grady's Affirmative Defenses, doc. 27 (the "Grady Motion") (together, the "Motions to Strike").
[2] This is not intended to constitute findings of fact, but an outline of allegations and admissions in the pleadings. All findings are reserved for trial or summary judgment.

beneficiary of his wife's QTIP trust, and vice versa. Their counsel, David Grady, is the trustee of both trusts.

In March 2011, the trusts pledged all of their assets to secure loans, the proceeds of which were apparently used to buy annuities payable to the Hopkins.

In 2011, Charter Bank, FSB brought an action against the Hopkins and others in the First Judicial District Court, State of New Mexico, captioned *Charter Bank v. Ladybug Partners, LLC, Ray Chavez, Johnny Ray Chavez, and Barry Hopkins,* No. D-0101-CV-201100065 (the "State Court Action"). Hopkins and others filed an Answer and Counterclaim in the State Court Action on April 3, 2011, in which they asserted, inter alia, the affirmative defense of unclean hands, various affirmative defenses based on alleged improper conduct of the plaintiff and others, and a counterclaim based on such alleged improper conduct.

On March 31, 2013, Judge Barbara J. Vigil entered an order granting LPP Mortgage Ltd. ("LPP")[3] summary judgment on the Counterclaim. On March 22, 2012, Judge Vigil entered a final judgment in LPP's favor against the Hopkins and others in the State Court Action, in the total amount of $276,897.96.

On May 31, 2013, the Hopkins filed this bankruptcy case and Plaintiff was appointed the Chapter 7 Trustee. Plaintiff brought this adversary proceeding November 21, 2013. Because more than two years had elapsed between the transfers to the trusts and the petition date, the Plaintiff asserted primarily state law avoidance actions, which have a four-year statute of limitations. The claims were asserted pursuant to 11 U.S.C. § 544(b)(1).[4]

---

[3] Successor in interest to Charter Bank, FSB.
[4] "[T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured

-2-

Case 13-01101-t    Doc 34    Filed 05/29/14    Entered 05/29/14 10:41:33 Page 2 of 12

LPP filed an unsecured claim for $220,239.57; Grady Law & Mediation LLC filed an unsecured claim for $59,472.75; and CNH Capital America LLC filed an unsecured claim for $2,880.42.

Plaintiff contends that the property transfers to the QTIP trusts and the pledge of collateral to secure the loans to the trusts are avoidable fraudulent or preferential transfers, designed and carried out to shelter assets after the Hopkins received the demand letter on the guaranty. The Hopkins assert that the transfers were done in connection with legitimate estate and retirement planning, and are not avoidable.

## II.    Plaintiff's Claims

The Plaintiff's amended complaint asserts 46 claims, summarized in the following table:

| Count | Property at Issue | Claim | Defendants |
|---|---|---|---|
| 1 | 5 vehicles | § 542[5] turnover | Debtors |
| 2 | Cascade[6] | Avoid fraudulent transfers; intent to hinder, delay or defraud[7] | Barry Hopkins Trust; Sandy Hopkins Trust; Grady; Real Asset; Durango Asset; Hosten |
| 3 | Loma Hermosa[8] | " | " |
| 4 | Palisades | " | " |
| 5 | Rio Puerco[9] | " | " |
| 6 | Timeshare[10] | " | " |
| 7 | Concrete Company[11] | " | " |
| 8 | Ladybug Partners[12] | " | " |

---

claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title."

[5] Unless otherwise noted, all citations are to 11 U.S.C.
[6] The Hopkins' residence.
[7] § 56-10-18(A)(1) N.M.S.A. 1978.
[8] A shop and adjoining land, presumably for Debtors' concrete business.
[9] Vacant land in Rio Puerco estates.
[10] Timeshare at Eagle Wing Suites at Angel Fire.
[11] Barry Hopkins Concrete.
[12] Hopkins' membership interest in Ladybug Partners, LLC, a company that owned one or more

-3-

| | | | |
|---|---|---|---|
| 9 | Personal Property[13] | " | " |
| 10 | Cascade | Avoid fraudulent transfers; insolvent; debts beyond ability to pay[14] | " |
| 11 | Loma Hermosa | " | " |
| 12 | Palisades | " | " |
| 13 | Rio Puerco | " | " |
| 14 | Timeshare | " | " |
| 15 | Concrete Company | " | " |
| 16 | Ladybug Partners | " | " |
| 17 | Personal Property | " | " |
| 18 | Cascade | Avoid fraudulent transfers; insolvent; no reasonably equivalent value[15] | " |
| 19 | Loma Hermosa | " | " |
| 20 | Palisades | " | " |
| 21 | Rio Puerco | " | " |
| 22 | Timeshare | " | " |
| 23 | Concrete Company | " | " |
| 24 | Ladybug Partners | " | " |
| 25 | Personal Property | " | " |
| 26 | Cascade | Avoid preferential transfers to insider[16] | " |
| 27 | Loma Hermosa | " | " |
| 28 | Palisades | " | " |
| 29 | Rio Puerco | " | " |
| 30 | Timeshare | " | " |
| 31 | Concrete Company | " | " |
| 32 | Ladybug Partners | " | " |
| 33 | Personal Property | " | " |
| 34 | Cascade | Avoid fraudulent transfers; | " |

---

lots in the Oshara Village development in Santa Fe, New Mexico.

[13] All of Hopkins' tangible personal property, including without limitation, all of their clothing; household goods; furniture; furnishings and rugs; bric-a-brac; tools; equipment; appliances; electronics; jewelry; art work; collections (specifically including all numismatic and philatelic collections); gold and silver coins and other precious metals; books; photographs; antiques; family heirlooms; silverware; china; linens; hobby paraphernalia; any animals and/or pets; motor vehicles; together with any insurance or insurance proceeds payable with respect to any of such property.

[14] § 56-10-18(A)(2) N.M.S.A. 1978.

[15] § 56-10-19(A) N.M.S.A. 1978.

[16] § 56-10-19(B) N.M.S.A. 1978

| | | transfer within 10 years to self-settled trust with intent to hinder, delay, or defraud creditors[17] | |
|---|---|---|---|
| 35 | Loma Hermosa | " | " |
| 36 | Palisades | " | " |
| 37 | Rio Puerco | " | " |
| 38 | Timeshare | " | " |
| 39 | Concrete Company | " | " |
| 40 | Ladybug Partners | " | " |
| 41 | Personal Property | " | " |
| 42 | Money damages | Civil conspiracy | All defendants |
| 43 | Money damages | Breach of Fiduciary Duty | Grady and law firm |
| 44 | Unspecified | Undiscovered Fraudulent transfers | All defendants |
| 45 | Money damages | Legal malpractice | Grady and law firm |
| 46 | Money damages | Unfair Trade Practices[18] | Grady and law firm |

### III. Defendants' Answer and Affirmative Defenses

The Hopkins answered the complaint, admitting or denying each of the complaint's 283 numbered paragraphs. They also asserted ten affirmative defenses, including unclean hands and that Plaintiff's claims are barred because of the bad acts of Plaintiff's predecessors-in-interest (the "Prior Bad Acts" defense).

David Grady, Grady Law & Mediation LLC, the two QTIP trusts, Real Asset Management LLC; Durango Asset Management LLC; and Hosten ar Livranta Och Sparbolag, A.B. LC (together, the "Grady Defendants") answered the complaint, admitting or denying each numbered allegation. Like the Hopkins, the Grady Defendants also asserted the affirmative defenses of, inter alia, unclean hands and Prior Bad Acts.

---

[17] § 548(e).
[18] § 57-12-1 N.M.S.A. 1978.

IV.     The Motions to Strike

With the Motions to Strike, Plaintiff asks the Court to strike defendants' unclean hands and Prior Bad Acts defenses. The grounds for the Motions are that the final judgment entered in the State Court Action adjudicated both defenses and foreclosed relitigation of the defenses.

V.     Standard for Motions to Strike

Rule 12(f) Fed. R. Civ. P., applicable to this proceeding under Rule 7012(b) Fed. R. Bankr. P., provides: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

To grant a Rule 12(f) motion, "The Court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defenses succeed."  *Lane v. Page*, 272 F.R.D. 581, 587 (D.N.M. 2011). *See also Anchor Hocking Corp. v. Jacksonville Elec. Auth.*, 419 F. Supp. 992, 1000 (M.D. Fla. 1976) (citations omitted) ("The standard that must be met is undisputed: only if a defense is insufficient as a matter of law will it be stricken. A defense is insufficient as a matter of law if, on the face of the pleadings, it is patently frivolous, or if it is clearly invalid as a matter of law."). If this high burden is met, it is appropriate to strike affirmative defenses to prevent litigation of frivolous matters.

One commentator has explained that federal courts generally disfavor Rule 12(f) motions:

> Both because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or harassing tactic, numerous judicial decisions make it clear that motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted. Thus, in order to succeed on a Rule 12(f) motion to strike surplus matter from an answer, the federal courts have established a standard under which it must be shown that the

allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party.

Wright & Miller, Federal Practice and Procedure: Civil 3d §1380, n. 11 and accompanying text (footnotes omitted). This standard is accepted in New Mexico. *See Lane*, 272 F.R.D. at 587 (citing Wright & Miller and compiling cases).

The Plaintiff's use of Rule 12(f) in this context, i.e. seeking to strike affirmative defenses, is proper procedurally. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057-58 (5th Cir. 1982) (holding that a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law). *See generally* Wright & Miller, Federal Practice and Procedure Civil 3d, § 1380, n. 1 and accompanying text (a motion to strike is the primary procedure for objecting to an insufficient defense).

As with a Rule 12(b)(6) motion, when a Rule 12(f) motion is being considered the Court does not weigh evidence. Instead, it must assume that the facts set forth in the pleading sought to be stricken are true and correct. *See Fairbanks Capital Corp. v. Jenkins,* 225 F. Supp. 2d 910, 914 (N.D. Ill. 2002) (stating that in considering a motion to strike the Court must take defendants' allegations as true).

VI. <u>Consideration of Matters Outside the Pleadings</u>

In addition to the legal argument presented in the Motions, the Plaintiff attached three documents (the "State Court Documents") from the State Court Action. These documents are an answer and counterclaim filed by the Hopkins and others, an order granting the plaintiff's motion for summary judgment on the defendants' counterclaim, and a transcript of a final

judgment entered in the plaintiff's favor in the State Court Action. Defendants did not object to Plaintiff's use of the State Court Documents to support the Motions to Strike.

Normally matters outside the pleadings are not considered on a Rule 12(f) motion. *Krauss v. Keibler-Thompson Corp.,* 72 F.R.D. 615, 617 (D. Del. 1976); Wright & Miller Federal Practice and Procedure: Civil 3d § 1380 ("Matter outside the pleadings normally not considered on a Rule 12(f) motion"). Courts have made exceptions to this general rule, however, especially where, as here, the outside matters have not been objected to and are undisputed. *See Wilkinson v. Feild,* 108 F. Supp. 541, 545 (W.D. Ark. 1952) (court considered a deposition because both parties referred to it in their Rule 12(f) briefs); *Post v. Textron, Inc.,* 531 F. Supp. 45, 47 (W.D. Mich. 1981) (court considered matters outside of the pleadings since both parties submitted them); *Diamond Scientific Co. v. Ambico, Inc.,* 848 F.2d 1220, 1226-27 (Fed. Cir. 1988) (affirmed district court's consideration of matters outside the pleadings because, inter alia, they presented uncontested factual matters). *See also* 2A J. Moore, *Moore's Federal Practice,* ¶12.21[3], at 2438 (1975) (practice of reviewing only pleadings is 'regrettable').

In this case, no dispute was raised as to the authenticity of the State Court Documents, nor did any Defendant object to the Court considering them. Defendants even referred to the State Court Action and the summary judgment entered therein in their answers.[19] In the particular circumstances of this case, the Court finds that it is fair and reasonable to consider the State Court Documents.

---

[19] Hopkins answer, ¶ 296; Grady answer, ¶ 9 of the affirmative defenses.

### VII. The Debtors' Defenses

In response to the Hopkins Motion the Debtors denied that preclusive principles bar their defenses and also argued that the defenses "set forth and establish the basis of Defendants Hopkins actions, which are relevant to the present case." Response to the Hopkins Motion, filed April 7, 2014, doc. 28, p. 3.

The Debtors' response is insufficient for several reasons. First, since admittedly the only purpose of the defenses is to "establish the basis of the Defendants' actions," inserting the text in affirmative defenses in improper. Instead, the Debtors should have inserted the language into one of the 287 paragraphs of the answer.

Second, the defenses, viewed as such rather than as an explanatory narrative, are not relevant. Plaintiff brought most of his claims under state law, pursuant to § 544(b)(1). To proceed under this section, Plaintiff must show, inter alia, that there was at least one unsecured, pre-petition creditor with a valid claim against the Debtors. *See, e.g., In re 9281 Shore Road Owners Corp.,* 187 B.R. 837, 852 (E.D.N.Y. 1995); *Bakst v. Probst (In re Amelung),* 436 B.R. 806, 809 (Bankr. D.S.C. 2010); *Dicello v. Jenkins (In re Int'l Loan Network, Inc.),* 160 B.R. 1, 18, n. 30 (Bankr. D.D.C. 1993). If there is no so-called "golden creditor" against whom the transfer is voidable under applicable law, then the trustee cannot bring an action under § 544(b)(1). *In re Equip. Acquisition Res., Inc.,* 742 F.3d 743, 746 (7th Cir. 2014) (stating that the trustee stands in the shoes of an actual unsecured creditor, and if the actual creditor could not succeed for any reason, e.g. statute of limitation, estoppel, res judicata, then the trustee is similarly barred); *Bumgardner v. Simms (In re Simco Mech.),* 151 B.R. 978, 983 (Bankr. S.D. Fla. 1993); *Weibolt Stores Inc. v. Shottenstein,* 94 B.R. 488, 506 (N.D. Ill. 1988).

The questioned defenses would be relevant if LLP's claim were the only general unsecured claim in this case. It is not; there are at least two other unsecured creditors. CNH Capital America LLC filed an unsecured claim for $2,880, and Grady Law & Mediation LLC filed an unsecured claim for $59,472. The Debtors have never alleged, in their answer or their response to the Hopkins Motion, that no "golden creditor" exists. Because that is not an issue, defenses attacking the validity of LPP's claim are wholly irrelevant to the proceeding.

Furthermore, preclusion principles prevent the Debtors from raising the defenses. Claim preclusion bars litigation of claims that were or could have been advanced in an earlier proceeding. *Strickland v. City of Albuquerque*, 130 F.3d 1408, 1411 (10th Cir. 1997) (citing *State ex rel Martinez v Kerr-McGee Corp.*, 898 P.2d 1256, 1259 (N.M. Ct. App. 1995)).

"Federal courts give the same preclusive effect to state court judgments that those judgments would be given in the state court from which they emerged." *Strickland,* 130 F.3d at 1411 (citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982)). Under New Mexico law, claim preclusion requires four elements: "(1) the same party or parties in privity; (2) the identity of capacity or character of persons for or against whom the claim is made; (3) the same subject matter; and (4) the same cause of action in both suits." *Strickland,* 130 F.3d at 1411, citing *Myers v. Olson,* 676 P.2d 822, 824 (N.M. 1984).

Here, LPP has filed an unsecured claim for $220,239, *see* Claim 1 in claims register, based on the final judgment entered in the State Court Action. Res judicata prevents the Debtors from collaterally attacking the judgment in this adversary proceeding. *See Harwell v. Hill (In re Harwell),* 2011 WL 1135382, at **4-5 (D. Colo. 2011) (affirming bankruptcy court's decision to overrule debtor's claim objection because the issue had previously been decided pre-petition

litigation between the debtor and creditor); *In re Crosby,* 261 B.R. 470, 477 (Bankr. D. Kan. 2001) (overruling debtor's objection to creditor's claim because the claim was based on a pre-petition state court judgment). *See generally Montana v. U.S.,* 440 U.S. 147 (1979) ("A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies ..."). The Debtors, having been parties to the State Court Action, cannot challenge the resulting judgment in this adversary proceeding.

VIII. The Grady Defendants' Defenses.

Plaintiff also asks the Court to strike the unclean hands and Prior Bad Acts defenses of the Grady Defendants. The Grady Defendants disagree, arguing that the defenses do not attack the Debtor's liability to LPP, but instead were asserted

> in response to the Trustee claims that are predicated on their alleged belief, actual intent, and notice. . . . . Paragraphs 7, 9-22, and 25-27 of the affirmative defenses elaborate on the alleged factual underpinnings of the Grady Defendants' good faith in the transaction now in dispute, including the absence of any "actual intent" to hinder, delay or defraud creditors, the absence of "reasonable cause to believe" the Hopkins Defendants were insolvent, and the absence of timely notice that the Hopkins Defendants were actually subject to debt collection.
>
> The affirmative defenses do not challenge the underlying debts *per se*—but do, instead, challenge the Trustee's allegations about the Grady Defendants' knowledge of and expectations about the debt.

Response to the Grady Motion, filed April 8, 2014, doc. 29, pp. 4-5.

The Grady Defendants certainly are entitled to argue, and have argued in their answer and elsewhere, that Plaintiff's claims fail because of the state of mind of the Debtors and/or the Grady Defendants. At the pleading stage simple denials are sufficient, but "elaboration" of a

-11-

defendant's position is permitted. What is improper is to couch a lengthy "elaboration" as an affirmative defense when it is not a defense. The facts alleged by the Grady Defendants in their unclean hands and Prior Bad Acts defenses may (or may not) be relevant at trial, but do not belong in the Grady Defendants' affirmative defenses.

Furthermore, the defenses are not relevant, for the reasons outlined above.

## IX. Conclusion

The Motions to Strike are well taken and will be granted, with the understanding that, to the extent relevant at a trial on the merits, the Court will hear testimony relating to the Defendants' belief, intent, state of mind, and/or notice.

A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: May 29, 2014.

Copies to:

Anthony Spratley
1001 5th St. NW
Albuquerque, NM 87102

Clinton Marrs
4811 Hardware Dr. NE, Suite A-4
Albuquerque, NM 87109

Paul Kienzle, III
Jordan DeHaan
P.O. Box 587
Albuquerque, NM 87103

-12-